**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| JAMES ANDERSON, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | CAUSE NO.: 2:14-CV-436-JEM |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
|     Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff on November 26, 2014, and Brief in Support of Plaintiff's Motion for Summary Judgment [DE 20], filed on April 30, 2015. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On August 7, 2015, the Commissioner filed a response, and on September 4, 2015, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

**PROCEDURAL BACKGROUND**

On December 30, 2011, Plaintiff filed an application for benefits alleging that he became disabled on April 21, 2007. Plaintiff's application was denied initially and upon reconsideration. On May 28, 2013, Administrative Law Judge ("ALJ") Laurel J. Greene held a video hearing at which Plaintiff, with an attorney representative, and a vocational expert ("VE") testified. On June 10, 2013, the ALJ issued a decision finding that Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The ALJ made the following findings under the required five-step analysis:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2. The claimant has not engaged in substantial gainful activity since April 21, 2007, his alleged onset date.

3. The claimant has the following severe impairments: residuals from right femur and left knee surgeries.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. The claimant has the residual functional capacity to lift and carry up to 20 pounds occasionally, 10 pounds frequently, stand and/or walk about 6 hours in an 8-hour workday and sit about 6 hours in an 8-hour workday with normal breaks. The claimant can occasionally climb ladders, ropes, or scaffolds, and can occasionally walk on wet, uneven surfaces.

6. The claimant is unable to perform any past relevant work.

7. The claimant was 45 years old, which is defined as a young individual age 18-49 on the alleged disability onset date. The claimant subsequently changed age category to closely approaching age.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability from April 21, 2007, through the date of the decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case.

Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## FACTS

Plaintiff has been diagnosed with diabetes melliuts, type II, and has difficulties with blurred vision. He has a history of special education, below-average IQ, learning disabilities, anxiety, and depression. After Plaintiff broke his femur in 1981, it was repaired by implanting a rod into it. In August 2004, Plaintiff ruptured his anterior cruciate ligament and tore the medial meniscus in his knee. He reports continued pain in his left knee and right hip, and uses a cane to aid in his balance a few days per week.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the

question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "A reversal and remand may be required, however, if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citations omitted).

At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as

an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing her previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's Residual Functional Capacity ("RFC"), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR 96-8p, 1996 WL 374184 (July 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

**A.**     **Residual Functional Capacity**

Plaintiff argues that the ALJ's RFC assessment was incomplete and not properly determined. The Commissioner argues that the ALJ's findings are supported by substantial evidence.

"The RFC is an assessment of what work-related activities the claimant can perform despite h[is] limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see also* 20 C.F.R. §§ 404.1545(a)(1); 416.1545(a)(1). In evaluating a claimant's RFC, an ALJ is expected to take into consideration all of the relevant evidence, including both medical and non-medical evidence. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3). According to SSA regulations:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material

6

> inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p at *7. Although an ALJ is not required to discuss every piece of evidence, she must consider all of the evidence that is relevant to the disability determination and provide enough analysis in her decision to permit meaningful judicial review. *Clifford*, 227 F.3d at 870; *Young*, 362 F.3d at 1002. In other words, the ALJ must build an "accurate and logical bridge from the evidence to his conclusion." *Scott*, 297 F.3d at 595 (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).

Plaintiff argues that although the ALJ found that Plaintiff had limitations in concentration, persistence, and pace, the RFC did not account for these limitations. The Commissioner argues that because the limitations in concentration, persistence, and pace were mild, they were not a severe impairment and did not significantly limit his mental ability to do basic work activities.

"Although [] impairments may not on their own be disabling, that would only justify discounting their severity, not ignoring them altogether. Moreover, . . . an ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) ("Even if each problem assessed separately were less serious than the evidence indicates, the combination of them might be disabling."); *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) ("[A]n ALJ is required to consider the aggregate effects of a claimant's impairments, including impairments that, in isolation, are not severe.") (citing 20 C.F.R. § 404.1523); *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003)).

In this case, the ALJ mentioned Plaintiff's mild limitations in concentration, persistence, and pace, as well as his learning disorder and depression, concluding that "the records failed to

document more than minimal limitations as a result." She considered the combination of depression and a learning disability, but did not explain how those limitations might affect or further limit Plaintiff's physical ability to do work, nor did she explain how she took into account those limitations into the RFC. The ALJ need not specifically include the limitations in the RFC, but she must consider the combination of impairments, and explain how she incorporated the mental limitations into the RFC. "In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009) (citing S.S.R. 96-8p; *Golembiewski*, 322 F.3d at 917); *see also Underwood v. Colvin*, No. 2:11-CV-354-JD-PRC, 2013 WL 2420874, at *2 (N.D. Ind. May 30, 2013) ("While it is true that the ALJ need not specifically include limitations on concentration, persistence and pace in the RFC finding, . . . the requirement that the ALJ "consider" such limitations has certainly been interpreted to mean that a real "evaluation" of the effect of those limitations on the claimant's ability to work must take place. The ALJ did not do that, here. After finding mild limitations on concentration, persistence and pace, the ALJ did not include those findings in the RFC; did not explain why or how those findings were incorporated into the RFC as otherwise written; and in fact did not give any indication that those findings were considered or evaluated at all in arriving at the RFC.") (citations omitted).

In this case, the RFC does not address any mental, intellectual, or emotional limitations, such as a limitation to unskilled work or work that does not require significant amounts of reading. Especially given the number of reports of low IQ, learning disorder, difficulty reading, and depression, the failure to explain how the ALJ took Plaintiff's mental and learning difficulties into

account in the RFC or even minimally address the combined effects of Plaintiff's impairments leaves the Court unable to trace her reasoning. To the extent that the record does not contain enough information to ascertain the effect of Plaintiff's limitations on his ability to do work, including the amount of time Plaintiff would be able to maintain concentration, persistence, and pace in a workday, the ALJ is reminded of his responsibility to develop the record, which may include ordering additional examinations or contacting medical sources to obtain records and evidence necessary to making the determination. *See, e.g., Barnett*, 381 F.3d at 669 ("An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable.") (citing 20 C.F.R. § 404.1527(c)(3); SSR 96-2p, 1996 WL 374188 at *4 (July 2, 1996)); 20 C.F.R. §§ 404.1512(d)(1), 416.919(b)); *see also Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) (citing 20 C.F.R. §§ 416.912(d)-(f), 416.919, 416.927(c)(3)) (other citations omitted).

**B.    Credibility Assessment**

Plaintiff argues that the ALJ improperly evaluated his credibility. The Commissioner argues that the ALJ's opinion is supported by substantial evidence.

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

> (i) [The claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of [] pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication . . . ;
> (v) Treatment . . . for relief of [] pain or other symptoms;
> (vi) Any measures . . . used to relieve your pain or other symptoms . . . ; and
> (vii) Other factors concerning [] functional limitations and

restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). In making a credibility determination, Social Security Ruling 96–7p states that the ALJ must consider the record as a whole, including objective medical evidence, the claimant's statement about symptoms, any statements or other information provided by treating or examining physicians and other persons about the conditions and how they affect the claimant, and any other relevant evidence. *See* SSR 96-7p, 1996 WL 374186 (Jul. 2, 1996).

An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states he or she is unable to work. *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, Ruling 96-7p provides that a claimant's statements regarding symptoms or the effect of symptoms on his ability to work "may not be disregarded solely because they are not substantiated by objective evidence." SSR 96-7p at *6. An ALJ's credibility determination is entitled to substantial deference by a reviewing court and will not be overturned unless the claimant can show that the finding is "patently wrong." *Prochaska*, 454 F.3d at 738.

Plaintiff argues that the ALJ erred in finding Plaintiff's cane use not credible. In the credibility portion of his opinion, the ALJ wrote: "While he testified that he has to use a cane to ambulate, at no point in the records was the claimant's gait categorized as impaired, limped, or abnormal in anyway, nor was there any mention of a cane." AR 20. She also noted that a cane had not been prescribed. Not only do canes not require a prescription, but the ALJ even noted earlier in the opinion that Plaintiff "uses a cane for stability and ambulation and has been doing so for 2 to 3 years *as needed* when his hip or knee condition is exacerbated." AR 17 (emphasis added). Furthermore, as Plaintiff points out, a number of medical records do reflect impairment of Plaintiff's gait. *See* AR 274 ("Positive for: Gait disturbance."); AR 308 ("[Plaintiff] has antalgic gait.").

10

It is not apparent to the Court how Plaintiff's use of ambulatory devices, even if only occasional, makes his allegations of pain and limitation less credible rather than bolstering them. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) ("Absurdly, the administrative law judge thought it suspicious that the plaintiff uses a cane, when no physician had prescribed a cane. A cane does not require a prescription."); SSR 96-7p at *6 ("[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded solely because they are not substantiated by objective medical evidence."). The regulations specifically remind ALJs to take into account in their credibility determination that, for example, "[t]he individual's daily activities may be structured so as to minimize symptoms to a tolerable level or eliminate them entirely, avoiding physical or mental stressors that would exacerbate the symptoms" and "the individual's symptoms . . . may be relieved with over-the-counter medications." SSR 96-7p, at *8. The ALJ failed to explain how use of non-prescribed medical devices or coping mechanisms shows that Plaintiff's allegations of pain are less than credible, rather than that Plaintiff uses assistive devices because of the pain and weakness he experiences. In addition to raising questions about her credibility assessment, the ALJ also did not include Plaintiff's occasional need for a cane in the RFC without explanation. *See, e.g., Ross v. Barnhart*, 119 F. App'x 791, 795 (7th Cir. 2004) ("'The RFC is an assessment of what work-related activities the claimant can perform despite her limitations.' In considering a claimant's RFC, an ALJ is expected to take into consideration all relevant evidence, both medical and non-medical.") (quoting *Young*, 362 F.3d at 1000); 20 C.F.R. §§ 404.1545(a)(1), (a)(3); 416.1545(a)(1), (a)(3)). Although Plaintiff does not need to use a cane all of the time, the VE testified that if he needed to use a cane while working, he would not be able to perform any of the jobs described by the VE.

Another important aspect of the ALJ's credibility assessment was her mention of Plaintiff's daily activities as an indication that he suffers fewer limitations than alleged, including his ability to occasionally babysit, clean, prepare meals, grocery shop, drive a car, and attend doctor's visits unaccompanied. Although she repeatedly mentions Plaintiff's daily activities, she nowhere explains how these basic acts of self-care, particularly given the reports that he performs them slowly, are inconsistent with his limitations. The Seventh Circuit Court of Appeals has repeatedly criticized credibility determinations that are based on a plaintiff's ability to take care of his personal hygiene, children, or household chores, as these alone are not sound bases for a credibility determination. *See, e.g., Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) ("An ALJ cannot disregard a claimant's limitations in performing household activities. The ALJ here ignored [the plaintiff]'s numerous qualifications regarding her daily activities" and methods of coping with pain); *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2006) ("The administrative law judge's casual equating of household work to work in the labor market cannot stand."); *Zurawski*, 245 F.3d at 887 (asserting that daily activities, such as doing laundry, helping children prepare for school, cooking, and washing dishes do not necessarily undermine or contradict a claim of disabling pain). To the extent that the ALJ was also using Plaintiff's ability to perform some activities of daily living as indicating an ability to perform full-time work, the Seventh Circuit has repeatedly emphasized that a person's ability to perform daily activities does not indicate an ability to work outside of the home. *See, e.g., Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other  persons . . . and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a

recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases."); *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) ("[The Plaintiff's] ability to struggle through the activities of daily living does not mean that she can manage the requirements of a modern workplace."); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("We have cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home . . . The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment . . . often differ dramatically between home and office or factory or other place of paid work.").

The ALJ also notes that Plaintiff continued to work and look for work after his alleged date of onset of disability and uses this as evidence that he is not disabled. Continuing to work after disability begins does not necessarily mean that a person is not disabled. As the Seventh Circuit has noted, "even persons who *are* disabled sometimes cope with their impairments and continue working long after they might have been entitled to benefits." *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012); *see also Gentle*, 430 F.3d at 867 ("A person can be totally disabled for purposes of entitlement to social security benefits even if, because of an indulgent employer or circumstances of desperation, he is in fact working."). Likewise, "[a] desperate person might force h[im]self to work – or . . . certify that []he is able to work – but that does not necessarily mean []he is not disabled." *Richards v. Astrue*, 370 F. App'x 727, 732 (7th Cir. 2010) (citing *Gentle*, 430 F.3d at 867; *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 918 (7th Cir.2003)).

There are a number of errors in the ALJ's assessment of Plaintiff's credibility, and on remand, the ALJ is directed to thoroughly explain his credibility assessment in accordance with the

applicable regulations and fully account for his cane use.

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Brief in Support of Plaintiff's Motion for Summary Judgment [DE 20] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 10th day of February, 2016.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc: All counsel of record